# Kerr et ux. *v.* Wilson, Exr., Appellant.

*Decedents' estates—Services rendered—Express contract—Family relationship—Uncle and nephew—Evidence—Periodical payments—Presumptions.*

1. The mere relationship of uncle and nephew does not in itself create a presumption of gratuitous service rendered by the nephew to the uncle; consequently an implied promise exists in such case to pay for the services, and the burden devolves upon the person denying such liability to show that no debt was in fact intended.

2. Where an uncle seeks a home in the house of his nephew so that he may have some one to care for him in his old age, and he is the sole beneficiary under the mutual arrangement, no family relationship is established, and no presumption of gratuitous service arises. Brown v. McCurdy, 278 Pa. 19, distinguished.

3. Where there is sufficient evidence of an express contract to overcome the presumption of gratuitous service, and also sufficient evidence to overcome the presumption of periodical payment for services, a claim for services will be allowed.

Argued October 6, 1925. Appeal, No. 115, March T., 1925, by defendant, from judgment of C. P. Butler Co., June T., 1925, No. 131, on verdict for plaintiffs, in case of Herbert S. Kerr and Margaret E. Kerr v. John H. Wilson, Executor of Eli Vanderlin, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for services. Before HENNINGER, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $5,600. Defendant appealed.

*Errors assigned* were, various instructions and refusal of judgment for defendant n. o. v., quoting record.

*James M. Galbreath,* with him *John H. Wilson,* for appellant.—The testimony in this case shows a family

relationship existing between the decedent and the plaintiffs below, which precludes a recovery on the part of said plaintiffs in the absence of an express contract clearly proven to pay for services: Brown v. McCurdy, 278 Pa. 19; Collin's Est., 83 Pa. Superior Ct. 31; Goodhart's Est., 278 Pa. 381.

The presumption is that payment was made periodically for the services rendered: Collin's Est., 83 Pa. Superior Ct. 31; Gilbraith's Est., 270 Pa. 288.

*J. J. Jackson,* of *Jackson & Troutman,* with him *Murrin & Murrin,* for appellees, cited: Gibb's Est., 266 Pa. 485; Bash v. Bash, 9 Pa. 260; Eichelberger's Est., 170 Pa. 242; Kauss v. Rohner, 172 Pa. 481; Smith v. Reimer, 179 Pa. 442.

OPINION BY MR. JUSTICE FRAZER, November 23, 1925:

Plaintiffs, husband and wife, sued defendant as executor to recover for services rendered his decedent for board and nursing during a period of six years immediately preceding decedent's death. The jury found for plaintiffs and a motion for judgment non obstante veredicto was dismissed and judgment entered on the verdict. Defendant appealed. We find no denial that the services sued for were rendered and were worth the amount fixed by the verdict. It is contended, however, first, that a family relation existed between plaintiffs and decedent which created a presumption that the services were rendered gratuitously, and, second, if no such family relationship existed, there was a presumption that payment for the services was made periodically and that the evidence was insufficient to rebut either of these presumptions.

Eleven years before decedent's death, he being past seventy-five years of age at the time, he went to reside with his nephew, one of the plaintiffs, and continued to make his home there until his death in 1923. Eight years before his death, he suffered a stroke, which resulted in

partial paralysis, and from which he never fully recovered, his physical condition thereafter making it necessary for him to receive constant attention. His condition grew gradually worse, and three months before his death he became entirely helpless, requiring attention both day and night. These services were performed entirely by plaintiffs.

The mere relationship of nephew and uncle does not in itself create a presumption of gratuitous service (Gibb's Est., 266 Pa. 485), consequently an implied promise existed to pay for the services rendered and accepted, and the burden devolved on the person denying such liability to show that no debt was in fact intended. It is argued by appellant, however, that, notwithstanding the absence of blood relationship, the existence of actual family relationship was disclosed by the evidence, within the rule laid down in Brown v. McCurdy, 278 Pa. 19, and therefore no implied contract to pay for the services rendered actually arose. In that case, plaintiff, at the request of her husband, went with him to live with his father and mother. The husband died two years later, and plaintiff continued to live in the joint home, as before. Later, the mother suffered a stroke of paralysis and was nursed by plaintiff until the former's death. It was there held that an actual family relationship existed and raised a presumption that the services were rendered gratuitously, consequently the burden was on plaintiff to establish an express contract, which burden was not met by proof of vague declarations of the mother, not in the presence of plaintiff, to the effect that the latter would be rewarded for the services rendered. It thus appeared that a family relationship had definitely been established before the necessity for actual service toward the person providing the home had arisen. In the present case the conditions were reversed, decedent sought a home and someone to care for him in his old age and was the sole beneficiary under the mutual arrangement between him and his nephew.

No services were to be rendered on his part nor were any contemplated. The case, accordingly, falls within the principle stated in Gibb's Est., supra, and no presumption of gratuitous services on the part of plaintiffs would arise.

There is also evidence from which the jury could properly find an express promise to pay for the services. The physician who attended decedent for a number of years and during his last illness testified he informed decedent that he should have a nurse to look after him, that the care of the children together with the attention he required was placing too much of a burden on Mrs. Kerr and that a nurse was secured for him. On her arrival at the Kerr home, decedent refused to permit her to wait on him, saying he wanted his nephew's wife to attend to his wants and that he would pay her for her work and keeping him but that he had his money invested, and she would be paid by his executor after his death. Another witness testified to statements made by decedent to plaintiffs, on occasions when they inquired concerning their pay, that they would get it after he was gone. This testimony, together with the circumstances of the relationship between the parties, was ample to rebut an inference that the services were to be rendered gratuitously. It was likewise sufficient to rebut a presumption of payment at regular intervals. Decedent acknowledged he was not paying because his funds were invested and he did not have the ready money, and stated frequently plaintiffs would be paid by his executors after his death. These statements were inconsistent with the theory of payment. Gibb's Est., supra, 489.

The judgment is affirmed.